UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVEN ALLEN,

    Plaintiff                                  Civil Action No. 09-13503

v.                                            HON. JULIAN ABELE COOK
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Steven Allen brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).[1]

---

[1] The district court's authority to remand a case for further administrative proceedings is found in § 405(g). *Hollon v. Commissioner,* 447 F.3d 477, 482-83 (6th Cir.2006). Sentence four of that section provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala*

## PROCEDURAL HISTORY

On August 4, 2005, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of November 19, 2004 (Tr. 43-45, 196-198). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on May 7, 2008 in Flint, Michigan before Administrative Law Judge ("ALJ") John L. Christensen (Tr. 205). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Melody Henry (Tr. 210-221, 221-225). On June 19, 2008, ALJ Christensen found that Plaintiff was not disabled (Tr. 23). On July 1, 2009, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the final decision on September 3, 2009.

## BACKGROUND FACTS

Plaintiff, born January 23, 1969, was 39 when the ALJ issued his decision (Tr. 43). He worked previously as a fast food worker, stock clerk, maintenance worker, delivery driver/warehouse worker, and laborer (concrete) (Tr. 79). He alleges disability as a result of lumbar back pain (Tr. 20).

---

*v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order); *Berkowski v. Commissioner of Social Sec.*, 652 F.Supp.2d 846, 849 (E.D.Mich.,2009) ("the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g)"); *Siuta v. Commissioner of Social Sec.*, 2009 WL 275732, 1 (E.D.Mich. 2009) ("A judgment must be entered immediately with a sentence four remand and the district court does not retain jurisdiction during the administrative proceedings on remand" (citing *Melkonyan, supra*). Indeed, a prevailing lawyer in a sentence four remand cannot apply for attorney fees under the Equal Access to Justice Act ("EAJA") unless and until judgment is entered. *Shalala v. Schhaefer, supra*.

### A. Plaintiff's Testimony

Plaintiff testified that he lived in Flint, Michigan with his wife, daughter, and step-daughter (Tr. 210). Plaintiff, noting that he was 6' 2" and 190, reported that he lost 40 pounds over the past two years (Tr. 211). He indicated that he had let his driver's license expire because he "didn't have anything to drive," noting that he currently took public transportation (Tr. 212). He denied that alcohol or drug abuse were involved in his decision not to renew his license, but admitted to occasional marijuana use (Tr. 212).

Plaintiff reported that he had recently completed a community college course in building construction (Tr. 212-213). He admitted that he currently worked part-time as a "chore provider," which required him to wash dishes and perform laundry chores (Tr. 213). Plaintiff alleged that his daughters helped him fulfill his job duties (Tr. 214). He noted that he last worked full-time in 2005 or 2006 as a prep cook (Tr. 214). He reported that shortness of breath obliged him to quit the job after approximately five months (Tr. 214). He added that his stock clerk and delivery driver/warehouse worker jobs were held for less than six months (Tr. 215).

Plaintiff alleged that back pain precluded his former work as a concrete laborer (Tr. 216). He reported that he was unable to either sit or stand for extended periods and that he experienced right hand weakness (Tr. 216). In response to questioning by his attorney, Plaintiff acknowledged that his recent community college class required him to sit every morning and afternoon for extended periods (Tr. 217). He stated that his current lack of insurance prevented him from acquiring pain killers (Tr. 217). Plaintiff reported that his wife and children did the grocery shopping for the household (Tr. 218). He testified that his back and pulmonary conditions obliged him to take two one to two-hour naps each day (Tr. 218-219).

Plaintiff alleged that he could lift a gallon of milk with both hands, adding that he experienced gripping problems (Tr. 219). He estimated that he could stand for up to twenty minutes before experiencing fatigue (Tr. 219). Plaintiff alleged that his functional abilities were also undermined by left leg numbness (Tr. 219-220). Noting that he had been treated in the past for depression, Plaintiff stated that his treatment was terminated because he showed signs of improvement (Tr. 220). Plaintiff alleged ongoing concentrational problems, noting that he spent most of each day watching television (Tr. 220). He indicated that his most comfortable position was lying on his stomach (Tr. 22).

**B.     Medical Evidence**

**1. Treating Sources**

In November, 2004, Plaintiff, intoxicated, sought treatment for a gunshot wound to the thigh as well as a left wrist injury (Tr. 185-188). Imaging studies were negative for a fracture (Tr. 188). In February, 2006, Muhammad A. Almansour, M.D., noted that Plaintiff complained of back pain (Tr. 89). The following month, Plaintiff was prescribed Flexeril and Darvocet (Tr. 88). Also in March, 2006, Plaintiff was diagnosed with angina and prescribed beta blocker and "aspirin therapy" (Tr. 161). An MRI of the lumbar spine was unremarkable, but an EMG of the lower extremities was positive for L5 radiculopathy according to neurologist Nael M. Tarakji, M.D. (Tr. 163-164, 166). In February, 2007, Plaintiff sought emergency treatment for chest pain (Tr. 97). An EKG, as well as imaging studies, showed normal results (Tr. 97, 128). In March, 2007, Dr. Almansour's treating notes indicate that Plaintiff experienced left arm and chest pain (Tr. 87). The following month, Dr. Almansour noted that Plaintiff was jaundiced (Tr. 86). A May, 2007 ultrasound study of the abdomen was normal (Tr. 90).

In November, 2007, Plaintiff was admitted to the hospital with chest pains (Tr. 100). Tests were negative for myocardial infarction, but a stress test conducted the following month revealed a "moderate sized fixed apical defect" (Tr. 100, 124-126). In March, 2008, Plaintiff again sought emergency care after experiencing chest pain (Tr. 94). Imaging studies of the chest were unremarkable (Tr. 122-123). He was discharged in stable condition (Tr. 96).

### 2. Non-Treating Sources

In September, 2005, J. L. Tofaulte, M.D., performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 191-193). Plaintiff reported a history of right hand injury but indicated that a November, 2004 gunshot wound to the thigh had been treated without complications (Tr. 191). Plaintiff stated that he was independent in all self-care activities but alleged lower back stiffness (Tr. 191-192). He demonstrated normal postural and manipulative functions (Tr. 192). Plaintiff appeared to favor his right side when sitting (Tr. 192-193).

### C. Vocational Expert Testimony

VE Melody Henry found that Plaintiff's former work was exclusively unskilled and performed at the medium exertional level[2] (Tr. 79). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history:

> "[The] individual has the following residual functional capacity. That'd be do light work, no climbing ropes, ladders, or scaffolds, only occasional crouching and crawling. Must work in a well controlled environment with no exposure to extreme

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

temperatures and humidity. No exposure in confined spaces to dust, odors, fumes, or gases. Given those limitations, is there work an individual could perform, and if so, please tell me what that work would be, along with the occupational title and number of jobs available in the region. By region, I mean the [S]tate of Michigan

(Tr. 223). The VE stated that given the above limitations, the individual could perform the work of a cashier (24,100 jobs in the regional economy), general office worker (9,870), and a bench assembler (9,295) (Tr. 223). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 223-224). The ALJ then added the following hypothetical limitations:

> "as a result of pain, depression secondary to pain, fatigue secondary to pain, that individual cannot sustain sufficient concentration, persistence and pace in doing simple, routine tasks on a regular and continuing basis. By that I mean eight hours a day, five days a week, 40 hours a week. Given those limitations, is there work an individual could perform?"

(Tr. 224). The VE replied that given the additional limitations, all work would be precluded (Tr. 224).

### D. The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ Christensen found that although Plaintiff experienced the severe impairments of "status post gunshot wound to the left thigh, lumbar pain and history of substance abuse," the conditions did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 20-21). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> "[T]o perform light work . . . with no climbing of ropes, ladders and scaffolds; and only occasional crouching and crawling, with all work in a well controlled environment with no exposure to extreme temperatures and humidity and no exposure in confined spaces to dust, odors, fumes and gases"

(Tr. 21).

Consistent with the VE's job findings, the ALJ determined that although Plaintiff was unable to perform any of his former jobs, he could work as cashier, general office worker, and assembler (Tr. 24). In support of the non-disability finding, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his conditions were "not credible to the extent they [were] inconsistent with the residual functional capacity assessment" (Tr. 22). The ALJ found "no evidence" that Plaintiff experienced heart disease (Tr. 22). He noted that despite allegations of disabling back, Plaintiff was "going to school to obtain a building certificate," and working part-time (Tr. 22). The ALJ found that Plaintiff's ongoing marijuana use undermined the disability claim (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v.*

*Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff argues that the hypothetical question posed to the VE did not reflect the ALJ's finding that he experienced moderate limitations in concentration, persistence, or pace. *Plaintiff's*

*Brief* at 8-14, (*citing* Tr. 22, 223), *Docket #11*. Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994), Plaintiff contends that the ALJ erred by failing to account for the concentrational limitations in the hypothetical question. *Plaintiff's Brief.* at 9.

*Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec*. 368 F.3d 629 (6th Cir. 2004), the court rejected the proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Id.* at 632 (internal citations omitted)(*citing Varley*, *supra*, 820 F.2d at 779).

The failure to account for deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. *Bankston v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000)(Zatkoff, J.). Under currently used Psychiatric Review Technique terminology, "moderate" deficiencies, as stated in the administrative decision (Tr. 22), suggest substantial limitations which must be acknowledged in the hypothetical question. *Id.*

The hypothetical question posed by ALJ Christensen does not address Plaintiff's concentrational impairments (Tr. 223). Defendant, submitting a 19 page brief, argues that substantial evidence supports the ALJ's choice of hypothetical limitations, citing Plaintiff's ability to attend school and hold a part-time job. *Defendant's Brief* at 15-16, *Docket #15*. To be sure, the ALJ was not required to include all of Plaintiff's professed limitations in the hypothetical question. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing*

*Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)). The transcript, reviewed in its entirety, might suggest that substantial evidence would support the conclusion that Plaintiff experienced only mild or non-existent concentrational problems.

The problem here is that the ALJ found explicitly that Plaintiff experienced moderate deficiencies in concentration, persistence, and pace (Tr. 22). Despite this determination, he made no reference whatsoever to concentrational limitations in the hypothetical question. The VE's job findings, made in response to an incomplete set of limitations (by the ALJ's own account) does not constitute substantial evidence. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.).

Defendant, citing *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), argues that the hypothetical restriction to "unskilled" work was sufficient to account for moderate concentrational limitations. *Defendant's Brief* at 14. However, *Smith* does not hold that "unskilled" work is sufficient to account for moderate deficiencies. Instead, *Smith,* (cautioning that talismatic language is not required to address concentrational problems) states that the hypothetical limitations of "simple routine tasks," "a low stress environment," and a work atmosphere requiring "minimal changes" could be read cumulatively to encompass moderate impairments. *Id.* at 379. This Court is unaware of any case law supporting Defendant's contention that the hypothetical limitation of "unskilled work," with nothing more, would be sufficient to address moderate concentrational deficiencies.

The practical effect of the ALJ's failure to address these limitations is that the VE's job findings of cashier, general office worker, and bench assembler would likely be modified or eliminated if the hypothetical question were amended to include limitations created by moderate

concentrational difficulties. For example, a restriction against quotas (in addition to limiting the stress level and complexity of the work) would appear, if nothing else, to impact the bench assembler position. *Smith,* 307 F.3d at 379. As such, the case should be remanded for further administrative proceedings, including a properly crafted RFC and hypothetical question, and further testimony from a VE. *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED to the extent that the case be remanded to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                      S/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

Dated: June 2, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 2, 2010.

                                      S/Gina Wilson
                                      Judicial Assistant